IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BDO USA, P.C.,<br><br>    *Movant*,<br><br>v.<br><br>ELLIOT FUHR,<br><br>    *Respondent*. | Case No.: 1:25-mc-00572<br><br><u>Underlying Litigation</u><br>*BDO USA, P.C. v. Ankura Consulting Group, LLC, Kevin Lavin, and Phuoc Vin Phan*, No. 3:24-cv-00179-HEH in the United States District Court for the Eastern District of Virginia, Richmond Division<br><br>**ORAL ARGUMENT REQUESTED** |

**BDO USA, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO COMPEL ELLIOT FUHR'S
<u>COMPLIANCE WITH SUBPOENA</u>**

**PRELIMINARY STATEMENT**

BDO filed the underlying lawsuit because Ankura Consulting Group, LLC ("Ankura"), Ankura CEO Kevin Lavin ("Lavin"), and Phuoc Vin Phan ("Phan") stole BDO's Healthcare Transaction Advisory Services ("TAS") practice, which Phan valued at $188 million in Ankura's hands. Together, the Defendants recruited at least 12 members of Phan's team to leave BDO and join Ankura in violation of common and statutory law, as well as Phan's contractual and fiduciary duties to BDO. Several of Phan's team members who followed him to Ankura also stole large quantities of BDO's and BDO's clients' confidential information and trade secrets and transferred it to Ankura.

Elliot Fuhr ("Fuhr") is the Leader of Innovation at Ankura. On October 20, 2025, BDO issued a subpoena to Fuhr, seeking documents in Fuhr's personal possession, custody, or control relevant to BDO's claims and damages in the underlying case. This includes documents concerning the valuation of BDO's Healthcare TAS practice, Ankura's recruitment and hiring of Phan, and relating to "Project Anchor"—a presentation reflecting a "model" that Phan used to create his valuation of the BDO Healthcare TAS practice in Ankura's hands.

On November 3, 2025, Fuhr served written responses and objections to the subpoena. (Declaration of Mark D. Meredith ("Meredith Decl.") Ex. 1). He did not deny that he possesses responsive documents but refused to produce a single one. Instead, relying on an objection that responsive documents were "produced by Ankura as possessor and custodian of such records and documents," Fuhr responded that he would not produce any "*additional* documents" in his personal possession. (*Id.* at 7-19 (emphasis added)).[1] On December 1, 2025, to compromise with

---

[1] The Court recently admonished the parties to avoid an "artificially restrictive [and] hypertechnical" reading of its September 18, 2025 Memorandum Order. ECF No. 202 at 9 (quoting Fed. R. Civ. P. 37, Advisory Committee's Notes (1993 Amendments)).

1

Fuhr after the November 18, 2025 meet and confer, BDO served Fuhr with proposed narrowed document requests. (Exs. 2, 3). On December 12, 2025, counsel for BDO once again contacted counsel for Fuhr, "offering a chance for [him] to reconsider and agree to respond in full to the narrowed requests." (Meredith Decl. Ex. 4). On December 15, 2025, counsel for Fuhr replied, stating that Fuhr never "testified to conducting regular communications over personal devices concerning relevant subject matter or with the persons at issue in the subpoena," ████████ ████████████████████████████████ (*Id.*) That same day, counsel for BDO provided Fuhr with one final opportunity to produce documents responsive to BDO's requests. He declined.

The Court should compel Fuhr to produce his personal emails, texts, and phone records regarding Defendants' scheme to steal the BDO Healthcare TAS practice. Ankura has taken the position that it does not have possession, custody, or control of Fuhr's personal devices and accounts, and Fuhr does not deny that he possesses responsive documents in his personal devices and accounts, and other evidence shows that Ankura's CEO and other senior executives utilized personal devices and personal accounts when communicating with Phan and the BDO recruits. A denial of this motion (and a similar one in the Northern District of Illinois seeking compliance from Ankura's President Angela Cinefro) would mean that *no one* at Ankura will be required to produce any personal communications from any of its principal personnel involved in the team or group "pull out" scheme to steal BDO's Healthcare TAS group and fold it into Ankura's Global TAS group, which Phan currently leads. This is grossly unfair to BDO, and inconsistent with principles of broad discovery, particularly considering the utter lack of undue burden posed on Fuhr to respond to the subpoena and produce documents. The Court should order Fuhr to search for and produce all improperly withheld documents and communications in his possession, custody, or control responsive to BDO's narrowed Request Nos. 1-5, and 7-12 within seven days.

2

(Meredith Decl. Ex. 3).

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This rule applies equally to third-party discovery. *See City of Almaty, Kazakhstan v. Ablyazov*, 2017 WL 11699074, at *2 (S.D.N.Y. May 5, 2017). "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

"If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence." *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994). To determine if a subpoena imposes an undue burden, courts typically consider "'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citing *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Boilerplate objections "such as those for privilege, relevance, and alternate availability of documents, do not excuse [a] total failure to produce documents responsive to those requests." *See Barbera v. Grailed, LLC*, 2024 WL 4836616, at *2 (S.D.N.Y. Nov. 20, 2024).

Here, the information requested by BDO is discoverable because it is relevant and proportional to the needs of this case. Fuhr cannot meet his burden to show otherwise.

**ARGUMENT**

I.  **The Court Should Compel Fuhr To Search for, and Produce, Documents Related to Defendants' Conspiracy To Recruit BDO's Healthcare TAS Practice Employees (Requests 1-5, 9, 10, 12).**

BDO seeks an order compelling Fuhr to produce recruiting-related and team "pull out"-related documents or communications from January 1, 2023, to February 29, 2024, that are responsive to BDO's requests. Specifically, this Court should order Fuhr to search for and produce: (a) documents and communications, including text messages from his personal phone, about Ankura's recruitment, hiring, and/or employment of Phan and 12 of his subordinates,[2] as well as Phan's former supervisor Ryan Guthrie; (b) documents and communications to reflect communications with these same individuals and/or with Ankura's primary owner, Madison Dearborn Partners ("MDP"), regarding Ankura's team "pull out" of the BDO Healthcare TAS team; (c) documents and communications concerning recruiting events and efforts with respect to those same individuals, especially communications related to a July 20, 2023 recruiting dinner that Phan, Fuhr, Defendant and Ankura's CEO Kevin Lavin, and another Ankura employee had in New York City; and (d) presentations, social media posts, and articles regarding the same. The Court should do so for at least the following four reasons.

**1.** During the November 18, 2025, meet and confer, counsel for Fuhr asserted that there is no basis to compel documents from Fuhr's personal cell phone because Fuhr testified ██████████████████████████████ This assertion is belied by the record.

It is clear from Fuhr's November 11, 2025, deposition testimony and discovery to date that he has unjustifiably withheld text messages and emails in his personal possession, custody, or control. ████████████████████████

---

[2] They are Alistair Anthony, Johnny Beauplan, Thomas Bradey, Zachary Gentry, Aram Gupta, Will Mixon, Byron Nickens, Ian Oehring, Jeffrey O'Brien, C.J. Seay, Patrick Shelton, and Mitchell Thomas.

4

██████████████████████████████████████████████████████████

██████████████████████████████████████. (*See* Meredith Decl. Ex. 5). ██████████████████████████████████████

██████████████████████████████████████ (*See* Meredith Decl. Ex. 6). ██████████

██████████████████████████████████████ (Meredith Decl. Ex. 7 at PHAN_0003279).

██████████████████████████████████████

██████████████████████████████████████

(Meredith Decl. Ex. 8 at PHAN_0003638). ██████████

██████████████████████████████████████ (Meredith Decl. Ex. 9 at PHAN_0003662).

██████████████████████████████████████

██████ (Meredith Decl. Ex. 3 at Request No. 5). ██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████ (Meredith Decl. Ex. 10 at PHAN_0002811). ██████████

██████████████████████████████████████

██████████████████████████████████████ (Meredith Decl. Ex. 11 at ANKURA_00007444). Yet Fuhr has produced no such email in response to BDO's

subpoena, or any documents reflecting how it arrived at his work email.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ (Meredith Decl. Ex. 12 at 160:5). To date, he has refused to produce a single document, let alone a single text message, in response to BDO's requests.[3]

Fuhr's failure to produce Project Anchor-related communications, including internal correspondence reflecting its review, distribution, or discussion, is even more noteworthy and cannot be reconciled with the record. In any organization, especially a consulting firm like Ankura built on its ability to "account" for costs, budgets, profits, losses, billable hours, headcounts, revenues, etc., a proposal of this magnitude would have generated multiple phone calls and written communications. Yet, Fuhr—who was intimately involved in Phan's recruitment and hiring together with the former BDO employees—has produced no follow-up documents or communications whatsoever. Nor has Ankura, Lavin, or Cinefro. Fuhr has failed to comply with his discovery obligations under the applicable rules. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2024 WL 2846035, at *4-5 (N.D. Ill. June 5, 2024) (raising serious concerns with a party's failure to "produce all responsive documents—whether the documents are electronically stored information (ESI) or tangible/physical documents" (emphasis in original)); *see also Daedalus Blue, LLC v. MicroStrategy Inc.*, 2021 WL 11709428, at *2-3 (E.D. Va. May 3, 2021) (differentiating between a party's email and non-email production, and specifically ordering completion of non-email production within 10 days).

---

[3] ████████████████████████████████████████████████████████
████████████████████████████

2. BDO's ability to review any text messages between Lavin and Fuhr has already been narrowed to Fuhr as the source because Lavin is either unwilling or unable to produce his communications with Fuhr. There is overwhelming evidence that Lavin intentionally deleted from his personal cell phone—or at least failed to preserve—relevant, responsive documents relating to the Defendants' conspiracy to steal BDO's Healthcare TAS practice. His counsel admitted as much in an August 29, 2025, letter to counsel for BDO, stating: "Mr. Lavin has long had a practice of deleting texts shortly after reading them, and he employed that practice with respect to the texts referenced in your letter . . . ." (Meredith Decl. Ex. 13). Lavin further asserted that he had no duty to preserve any such documents or communications related to this dispute "before BDO had threatened to pursue or instituted litigation," which he claimed was March 11, 2024, the day "BDO's Complaint was filed." (*Id.*).[4] Whether because Lavin deleted his off-channel communications relevant to this lawsuit on his personal cell phone, or because he has failed to meet his discovery obligations, BDO's ability to obtain these messages has been significantly hampered.

BDO's ability to assess information central to its statutory, tort, and contract claims will be inexcusably prejudiced if Fuhr is not ordered to produce relevant, responsive text messages between him and Lavin. The only reasonable inference is that Fuhr has improperly withheld these documents. Fuhr must produce them.

Indeed, as shown in the graphic below, there is a complete absence of *any* documents, communications, or emails from personal devices produced *between* Lavin, and Fuhr, Cinefro, Mike Buzzelli (Ankura's Executive Director of People Acquisition), or anyone at MDP[5]

---

[4] [redacted]

*See* Meredith Decl. Ex. 14 at ANKURA_00000438.
[5] Fuhr, Cinefro, Lavin, and MDP are all represented by the same counsel as Ankura.

concerning the hiring of Phan and other former BDO employees; or financial documents, including any valuations, projections, or budgets of the group in Ankura's hands. BDO is entitled not only to documents *from* Phan *to* these individuals but also documents *between* these senior level individuals concerning the categories of documents sought in its subpoena. In short, BDO is entitled to the wheel of communications and documents, not just the spokes. This wheel includes Fuhr.



3. Specifically with respect to Request No. 9, the Court should compel Fuhr to produce documents and communications "regarding all recruiting events and efforts," including "the July 20, 2023 recruiting dinner at IL Postino in New York, NY" that Fuhr undeniably attended, and "pre-event and post-event Documents and/or Communications including, without limitation, pre-event planning and coordination notes and post-event notes or feedback." Indeed,

███████████████████████████████████████

█████████ (Meredith Decl. Ex. 12 at 226:25-233:17). ██████████

8

██████████████████████████████████

██████████████████████████████████

██████" (*Id.* at 231:10). In response to BDO's Rule 45 subpoena, Fuhr must produce whatever documents and communications relevant to this July 20, 2023, dinner that are in his possession, custody, or control.[6]

4.   Fuhr has also failed to meet his burden of "proving the discovery is in fact . . . unduly burdensome and/or expensive." *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139. Fuhr provides a litany of generalized, boilerplate objections in response to BDO's requests, including (a) asserting that they are unduly burdensome and not proportional to the needs of the case; (b) claiming that the requests are "vague and ambiguous" because they supposedly fail to describe requested documents with particularity; (c) claiming, without a reasonable basis, that "the discovery of information [] is protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege"; or (d) arguing they seek documents "that were otherwise produced by Ankura as possessor and custodian of such records and documents." (Meredith Decl. Ex. 1 at 7-19).

The Court should overrule Fuhr's meritless, boilerplate objections and order the production of responsive documents. Courts routinely overrule generalized, unduly burdensome objections like Fuhr's because "conclusory assertion of burdensomeness is entitled to no weight." *Eletson Holdings Inc.*, 2025 WL 1335511, at *2 (S.D.N.Y. May 7, 2025) (citation and quotations omitted); *see Hamilton Sunstrand Corp. v. Aircraft Propeller Serv.*, No. 19CV6472RAOTW, 2020 WL

---

[6] As Fuhr testified, a jury found against him and his BRG colleagues in a Commonwealth of Massachusetts lawsuit alleging that they violated contractual obligations to FTI by coordinating with BRG to solicit FTI clients and recruit 33 employees from FTI. Although the case ultimately ended in confidential settlement, the jury awarded approximately $21,077,000, $12 million in compensatory damages, $18 million in punitive damages, and $14 million in prejudgment interest. (*See* Ex. 15 at 3).

8838031, at *2 (S.D.N.Y. June 22, 2020) (rejecting an unduly burdensome objection because plaintiffs used boilerplate language); *Melendez v. Greiner*, 2003 WL 2243101, at *1 (S.D.N.Y. Oct. 23, 2003) ("General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."); *Jacoby v. Hartford Life & Acc. Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009) (boilerplate objections "that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy" was a "paradigm of discovery abuse"); *see also Granite State Ins. Co., et al. v. Pulliam Enters., Inc., et al.*, 2015 WL 13667005, at *4 (N.D. Ind. Oct. 13, 2015) (waiving nonparty's general objections to a Rule 45 subpoena for documents because "[g]eneral objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not objections' at all—and will not be considered." (internal citations omitted)). The burden of producing the requested documents pursuant to BDO's narrowed requests is minimal and outweighed by their relevance to BDO's claims. Accordingly, the Court should require Fuhr to produce documents regarding Project Anchor and Defendants' shameless theft of BDO's Healthcare TAS practice.

**II.     The Court Should Compel Fuhr To Search for, and Produce, Documents Related to Ankura's Financial Performance and Strategic Planning (Requests 7, 8, 11).**

The Court should further order Fuhr to produce documents and communications relevant to management or Ankura Board of Directors presentations, investor or lender decks, financial performance reports, including monthly operating reports, strategic planning materials, plans for growth and expansion, and forecasts and budgets, among other requested categories of documents, from January 1, 2023 to the present. These include documents that would only be in Fuhr's possession, not in Ankura's possession—for example, text messages from Fuhr's personal phone. Fuhr does not deny that he has personal possession of such documents.

Specifically, BDO's seventh request, which seeks Ankura's Board of Director

10

presentations, investor or lender decks, financial performance reports, and strategic planning materials related to Ankura's TAS practice (*see* Meredith Decl. Ex. 3 at Request No. 7), is relevant to BDO's allegation that Ankura implemented its unlawful scheme despite knowing it was illegal because the potential payout dwarfed anticipated litigation costs. (Meredith Decl. Ex. 16, Am. Compl. ¶ 75). One reason Ankura was willing to risk stealing BDO's clients and employees is because the investment strategy may have been reaching its end, and there was an added incentive to maximize Ankura's revenues to enhance its sale value before seeking potential buyers.



(Meredith Decl. Ex. 12 at 74:25-75:22). ███ (*Id.* at 75:12-14). ███ (*Id.* at 76:18). At the very least, Fuhr has failed to produce these monthly operating reports that are clearly responsive to multiple of BDO's requests. He must now be compelled to do so.

BDO's eighth and eleventh requests seek all documents and communications concerning Ankura's headcount and financial performance, revenues, costs, profits, losses, budgets, or projections. (Meredith Decl. Ex. 3 at Request Nos. 8, 11). Examples of relevant documents include Management Information Presentations, Confidential Information Memoranda, meeting presentations, and other documents containing Ankura's valuations of these practices, as well as documents and communications related to Lavin's publicized "plans for growth and expansion over the next five years." *Id.*

The requested information is relevant to BDO's damages. BDO filed this lawsuit to put an

11

end to Defendants' unlawful conduct and to recover the damages their conduct has caused, as well as the unjust enrichment Defendants received. (Meredith Decl. Ex. 16, Am. Compl. ¶¶ 74-76, 162-69, 189-92). As the Court in the underlying litigation has found, revenues and financial projections for Ankura's group managed by Phan are relevant to BDO's potential damages claims given that the practice group and its leader and members and the BDO clients they stole, lie at the center of this case. *See* Meredith Decl. Ex. 17, ECF No. 150, Order at 3 ("The valuation of BDO's Healthcare TAS practice goes directly to the question of damages, which BDO must prove in this case alongside the other elements of its claims."); *see also Johnson v. Est. of Hazen*, 2023 WL 7186883, at *3 (D. Kan. Nov. 1, 2023) (granting defendants' motion to compel information that "may tend to prove or disprove the amount Plaintiff is claiming"); *Kohari v. Jessie*, 2014 WL 1338558, at *4 (S.D. W.Va. Apr. 3, 2014) (denying motion to quash subpoena request for documents that may permit defendants to "rebut" plaintiffs' claimed damages).

Moreover, Fuhr's assertion that this discovery is duplicative and harassing because Ankura has already produced relevant documents fails. BDO *has* asked Ankura for related information, and Ankura has refused to make a good faith effort to produce responsive documents. That aside, the documents BDO seeks with the subpoena to Fuhr are housed on Fuhr's personal devices and accounts, including his personal cell phone. He does not deny that they exist. BDO is entitled to obtain these documents from Fuhr. He should be ordered to produce them and not hide behind Ankura's own reluctance to produce what are clearly responsive documents.

## CONCLUSION

For the reasons set forth above, BDO respectfully requests that its motion to compel Elliot Fuhr's compliance with the subpoena issued to him be granted.

Dated: December 16, 2025                                        Respectfully submitted,

                                                                                   **MCDERMOTT WILL & SCHULTE LLP**
                                                                                   /s/ *Mark D. Meredith*
                                                                                   Mark D. Meredith (3989449)
                                                                                  One Vanderbilt Avenue
                                                                                  New York, NY 10017
                                                                                  Phone: (212) 547-5602
                                                                                  Fax: (646) 417-7688
                                                                                  mmeredith@mwe.com

                                                                                  *Attorney for Movant BDO USA, P.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 16th day of December 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the applicable ECF Registrants. A copy of this motion was also served on Fuhr's counsel and counsel of record in the underlying litigation pending in the Eastern District of Virginia via email.

*/s/ Mark D. Meredith*
Mark D. Meredith